IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| The United States ex rel. Freedom Unlimited, Inc., Northside Coalition for Fair Housing, Inc., The Hill District Consensus Group, Inc. and the Fair Housing Partnership of Greater Pittsburgh,<br><br>    Plaintiffs,<br><br>v.<br><br>The City of Pittsburgh, Pennsylvania and Luke Ravenstahl, its Chief Executive officer<br><br>    Defendants. | Civil Action No. 2:12-cv-01600<br><br>Hon. David S. Cercone<br><br>**Electronic Filing** |

**Brief in Support of Motion for Reconsideration**

    The Relators, by and through their undersigned counsel, for the reasons set forth below, respectfully move the Court to reconsider portions of March 31, 2016 Opinion (Doc. 71), Order (Doc. 72) and Judgment (Doc. 73).

    A Court may grant a motion for reconsideration if the moving party shows the need to correct a clear error of law or fact or to prevent a manifest injustice. Max's Seafood Café, 176 F.3d at 677 (citing North River Ins. Co. v. Cigna Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

**Reconsideration on the Applicability of *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295 (3d Cir. 2011)**

    Relators fully agree that the Third Circuit decision in *Wilkins* is controlling regarding the issue of whether they have pled that Defendants made false claims for payment as required by the False Claims Act. As to this issue, *Wilkins* is particularly helpful in that it determined that violations of certain health care law requirements were impliedly and, arguably, expressly conditions of payment while others were not. The "fundamental" issue is whether Relators'

allegations "cite to any regulation demonstrating that a participant's compliance … is a condition for its receipt of payment from the Government." *Wilkins*, 659 F.3d at 309-10.

An entity may be liable under the FCA for an express false certification "that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds" or liability for an "implied false certification" may attach "when a claimant seeks and makes a claim for payment from the Government without disclosing that it violated regulations that affected its eligibility for payment." *Wilkins at 305*. "Under an implied false certification theory, instead of looking at the defendant's representations to the Government, 'the analysis focuses on the underlying contracts, statutes, or regulations themselves to ascertain whether they make compliance a prerequisite to the government's payment.' [*U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.,* 543 F.3d 1211, 1218 (10th Cir.2008)]." *Wilkins at 313*. However in either case, compliance with the "contracts, statutes, or regulations" must be "a condition for its receipt of payment from the Government."

With respect to the Medicare marketing regulations in Wilkins, the relators could point to no such regulation. "The fundamental flaw in appellants' allegations is that the amended complaint does not cite to any regulation demonstrating that a participant's compliance with Medicare marketing regulations is a condition for its receipt of payment from the Government." Wilkins at 309-310. On the other hand, the relator-appellants in that case alleged that appellees submitted claims for payment to the Government at a time that they knowingly violated a law, rule, or regulation which was a condition for receiving payment from the Government, specifically the Anti-Kickback Statute (AKS). They alleged that compliance with the AKS was an express condition of payment to which appellees agreed when they entered into an agreement with the HHS Centers for Medicare and Medicaid Services (CMS) ("stating that 'Compliance

with CMS MA Guidelines ... are express conditions of payment' and stating that the AKS is part of the MA Guidelines"). *Wilkins* at 313.  The Court also cited CMS regulation 42 C.F.R. § 422.504(h), which requires that contracts with CMS specifically require compliance with the Anti-Kickback Statute, in determining that such compliance was a condition of payment. Wilkins at 313-314.

The present Relators have alleged that Defendants have knowingly acted in violation of express certifications for the receipt of federal funds.  "A grant under section 5306 of this title may be made only if the grantee certifies that it is following a detailed citizen participation plan which … [stating specific requirements]." 42 U.S.C. § 5304(a)(3).  "Any grant under section 5306 of this title shall be made only if the grantee certifies to the satisfaction of the Secretary that … the grant will be conducted and administered in conformity with the Civil Rights Act of 1964 [42 U.S.C.A. § 2000a et seq.] and the Fair Housing Act [42 U.S.C.A. § 3601 et seq.], and the grantee will affirmatively further fair housing; … and the grantee will comply with the other provisions of this chapter and with other applicable laws." 42 U.S.C. § 5304(b)(2) and (6).

42 U.S.C. § 5304 sets out the specific requirements of the citizen participation certification.  Further, this statute authorizes the HUD Secretary to determine what specific affirmatively furthering fair housing and compliance with applicable laws certifications are satisfactory as conditions of receiving grant funds. The Secretary has exercised this discretion by determining what specific certifications are satisfactory.[1]  Thus, during the relevant period of this proceeding, the Secretary has required that

---

[1] The verbatim certifications submitted by the present Defendants and other applicants for CDBG and HOME funds are set out in forms provided by HUD.  See specifically HUD's website at https://www.hudexchange.info/resource/2396/consolidated-plan-certifications-state-and-non-state/ which provides a link to the required certifications, http://www.hud.gov/offices/cpd/about/conplan/pdf/conplancertifications.pdf.

> [e]ach jurisdiction is required to submit a certification that it will affirmatively further fair housing, which means that it will conduct an analysis to identify impediments to fair housing choice within the jurisdiction, take appropriate actions to overcome the effects of any impediments identified through that analysis, and maintain records reflecting the analysis and actions in this regard.

(24 C.F.R. § 91.225(a)(1)); and with respect to the certification of compliance with applicable laws, the Secretary has determined that "[t]he following activities may not be assisted with CDBG funds: … [enumerating activities]"[2] (24 C.F.R. §§ 91.225(b)(8) and 570.207).

In *U.S. ex rel. Sobek v. Educ. Mgmt., LLC*, 2013 WL 2404082, at *28 (W.D. Pa. 2013), Judge McVerry quoted *United States ex rel Hen dow v. Univ. of Phoenix,* 461 F.3d 1166, 1175 (9th Cir.2006), as follows, when determining whether the program participation requirement at issue in that case was a condition of payment:

> …promises to comply with the Program Participation Agreement, are conditions of payment. These conditions are also 'prerequisites,' and 'the sine qua non' of federal funding, for one basic reason: if the University had not agreed to comply with them, it would not have gotten paid.

Similarly, in the present case, there can be no doubt that had the Defendants in its applications for payment refused to certify compliance with the core CDBG and HOME program requirements presently at issue, they would not have received payment. The Annual Action Plans with the required certifications are the applications for grant funds.  24 C.F.R. § 91.515.

In *Wilkins* the Court also noted with respect to the Medicare marketing program non-compliance that appellants do not "cite examples, in case law or otherwise, of the Government seeking recovery of Medicare payments for services that a provider actually performed on the

---

[2] The Secretary has stated further, during the relevant period of this proceeding, with respect to "general government expenses," "[e]xcept as otherwise specifically authorized in this subpart or under OMB Circular A–87, expenses required to carry out the regular responsibilities of the unit of general local government are not eligible for assistance under this part." 24 C.F.R. § 570.207(a)(2).

basis that its lack of compliance with marketing regulations rendered those services fraudulent." The present Relators have cited *U.S. ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester Cty., N.Y.,* 668 F. Supp. 2d 548 (S.D.N.Y. 2009) and the procedural history of this case as set out by the Second Circuit, 712 F.3d 761, 764-65 (2d Cir. 2013), as an example of the Government recovering payment for failure to comply with the affirmatively furthering fair housing certification.  Memorandum in Opposition to Motion to Dismiss (doc. 45) at 18.  See also, *City of Norwood, Ohio v. Harris,* 683 F.2d 150, 151 (6th Cir. 1982) where the Court noted that HUD had reduced "the amount of the Community Development Block Grant which had been conditionally awarded to Norwood for the 1978 program year to zero after determining that Norwood had failed to comply with a condition precedent relating to its fair housing commitment."

    Relators respectfully disagree that the specific program violations they have pled do not rise to the same level of gravity as that raised in *Westchester*.  They have alleged that the City failed to analyze the nature, extent and causes of the acknowledged concentration of assisted housing in racially impacted locations and the lack thereof in non-racially impacted locations, including racial discrimination, as required by the
HUD Fair Housing Planning Guide Vol. 1 § 2.4.  Amended Complaint (doc. 34) at ¶s 26, 48-50, 52 and 70.  Their additional allegation that no action has been taken, appropriate or otherwise, to address this concentration and lack of assisted housing in non-racially and low-income impacted locations (Id. ¶s 54, 56 and 57) may be more egregious than the claim in *Westchester* in that the City falsely stated to HUD that it was taking such action (Id. ¶ 60).  However, what is important to the present consideration is that Relators have pled non-compliance with core requirements of

the CDBG and HOME programs, requirements that Congress has specifically provided must be met as a condition of federal funding

Relators also fully agree that the components of a prevailing administrative enforcement scheme has relevance to the for payment/for participation consideration.  Thus, in *Wilkins*, the Court noted "that the Government had established an administrative mechanism for managing and correcting Medicare marketing violations which includes remedies for violations **other than the withholding of payment**".  *Wilkins* at 310 (emphasis added).  In contrast, HUD's enforcement scheme provides for the withholding of grant funds or "recovering the amount of the assistance furnished under this part which was not expended in accordance with it."  24 C.F.R. § 570.913(a) and (b).

Relators also agree that an FCA action is not authorized whenever there is any non-compliance with a CDBG or HOME requirement.  Over and above contractual, statutory or regulatory indication that the compliance is a prerequisites to payment from the government, "a defendant could not be held accountable for an 'unknowing' [violation] …" *Wilkins* at 314. Likewise in *Sobek* this Court quoted *United States ex rel. Main v. Oakland City Univ.,* 426 F.3d 914, 917 (7th Cir.2005) regarding  whether an FCA

> …approach would treat any violation of federal regulations in a funding program as actionable fraud. … [T]hat's wrong. A university that accepts federal funds that are contingent on following a regulation, which it then violates, has broken a contract.... But fraud requires more than breach of promise: fraud entails making a false representation, such as a statement that the speaker will do something it plans not to do.

By no means is perfect adherence with regulations required.[3]

---

[3] Relators respectfully disagree that the CDBG regulations are complex and disagree with the import of this if they are.  Eligibility for CDBG funding is broad.  There are few marks that must be met to render an activity eligible for such funding.  That which renders an activity ineligible, on the other hand, is narrow and is precisely listed by HUD in 24 C.F.R. § 570.207.

This Court has not taken the position that the "existence of an administrative enforcement mechanism [precludes] the possibility of an FCA claim."  Opinion (doc. 71) at p.62 quoting *Sobek* at *4, which in turn quoted *U.S. ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*, 688 F.3d 410, 414-15 (8th Cir. 2012).  In *Onnen*, the Court cited a number of cases including *Wilkins* and stated that

> none of these cases has held that a complex regime of regulatory sanctions *precludes* the Attorney General from suing under the FCA when the government has been damaged by a materially false or fraudulent claim for payment or by use of a record or statement in a materially false claim. We agree with the government that  "Congress intended to allow the government to choose among a variety of remedies, both statutory and administrative, to combat fraud."

*Ibid*. Should HUD, through the Attorney General, determine in any particular case that a FCA action should not go forward, it may dismiss the action at the outset or afterward, or take the case over for resolution or settlement upon such terms as it believes are appropriate.  31 U.S.C. § 3730(b)(1)(A), (c)(1) and 2(a) and (b).  Or "[n]otwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government".  31 U.S.C. § 3730(c)(5).  Had Congress determined that a comprehensive administrative enforcement scheme was itself a basis to withhold a remedy under the FCA for a knowingly false claim to the United States, it could have and would have so legislated.

Again, the Court in *Sobek* at *4 quoting *Onnen* at 414-415, which in turn cited *Wilkins* among others, determined that the "scope of regulatory requirements and sanctions may affect the fact-intensive issue of whether a specific type of regulatory non-compliance resulted in a materially false claim for a specific government payment" and refused to resolve this issue on summary judgment.  Likewise, this Court is respectfully requested to reconsider its decision to rule on this issue at this preliminary stage of this proceeding.

### Reconsideration of Dismissal on the Basis of "Public Disclosures"

Relators respectfully submit that the Court erred by dismissing with prejudice their fair housing and ineligible activities claims without first requiring notice and an opportunity to submit evidence on the factual issues inherent in Defendants' asserted public disclosure defense, particularly as to the original source exception to such a defense or, in the alternative, without providing Relators an opportunity to make a curative amendment to their Complaint.

Whether there has been a "public disclosure" within the meaning of the FCA (pre-ACA or post-ACA) and whether a Relator qualifies as an "original source" if there has been such a disclosure are inherently factual inquiries. *See, e.g., United States ex rel. Boothe v. Sun Healthcare Group, Inc.*, 496 F.3d 1169, 1177 (10th Cir.2007) ("Because the application of the 'based upon' and 'original source' tests turn on important factual questions, ones on which we have no record before us, we think the appropriate course is to remand the matter for the district court's consideration in the first instance."); *United States v. A.D. Roe Co,* 186 F.3d 717, 726 (6th Cir.1999) (vacating and remanding so that district court could make necessary factual findings as to whether *qui tam* plaintiff's claims were based on publicly disclosed information). These include, but are not limited to: 1) whether there has been a "public" disclosure that preceded the Relator's disclosure to the United States; 2) that articulated the Relator's allegation(s) that Defendant knowingly submitted false claims or statements material to claims for payment to the United States, or 3) that articulated all of the transactions necessary to infer all of the elements of (each of) the Relators' allegation(s), including scienter; and if so 4) whether Relator possessed information that was independent from the information articulated in the public disclosure; and if so (under the post-ACA FCA) 5) whether that information materially added to the information articulated in the public disclosure.

Prior to the filing of an Answer, a Court may not grant a motion to dismiss on the basis of an asserted public disclosure defense unless all of the predicate facts necessary to support the defense, and all of the predicate facts that would preclude an original source exception to this defense, are manifest on the face of the Complaint. See, for example, *Zubik v. Sebelius*, 911 F.Supp.2d 314, 322-323 (W.D.Pa. 2012) and cases cited therein regarding the 12(b)(1) standards that govern the pre-ACA public disclosure defenses raised by Defendants, and see *Brody v. Hankin*, 145 Fed.Appx. 768, 771-772, 2005 WL 2077180, 2 (3d. Cir. 2005) and cases therein regarding 12(b)(6) standards applicable to the post-ACA public disclosure defenses raised by Defendants. In this case, Relators respectfully submit, the predicate facts necessary for Defendants to establish their asserted public disclosure defenses and defeat an original source exception were not manifest on the face of the Complaint.[4] But even if a court finds that this standard is met, it nevertheless is well settled that the Court should not dismiss with prejudice without affording a good faith opportunity for the Relator(s) to cure. *E.g. United States Thomas v. Lockheed Martin Aeroparts, Inc.*, No. CV 3:13-183, 2016 WL 47882, at *12 (W.D. Pa. Jan. 4, 2016). This, at a minimum, should have occurred in this case in order to prevent the unjust dismissal of Relators obviously non-frivolous claims.

Perhaps more to the point, when a defendant presents and a Court considers evidence not attached to or referenced in the Complaint, as occurred in this case, the motion to dismiss should

---

[4] For instance, allegations in the Complaint plausibly demonstrate that insider information from Sala Udin supplied Relators with independent and material facts regarding both the City's scheme of funding expressly ineligible activities and its knowledge of the falsity of its certifications that it was not doing this. Amended Complaint (Doc. 34) at ¶s 105-108. Similarly, the Complaint alleges that, contrary to the City's certifications and statements in its reporting to HUD, the City did not in fact take actions to address the lack of affordable housing in non-racially impacted areas repeatedly identified by the City as an impediment to fair housing. Id. at ¶s 26, 48-50, 52, 54, 56, 57 and 70. Nowhere in the disclosures raised by Defendants are these allegations disclosed, and nowhere in the Court's Opinion are these facts that plausibly support original source status considered.

be converted to a motion for summary judgment so as to afford fair notice and opportunity to the Relator(s) to gather and produce evidence rebutting any facts or inferences purportedly deducible from the evidence.  This is as true for pre-Answer 12(b)(1) motions raising pre-ACA public disclosure defenses[5] as it is for 12(b)(6) motions raising post-ACA public disclosure defenses. *See* F.R.C.P. 12(d) ('If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); *accord, e.g., Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980).  In this case, Defendants attempted to introduce through voluminous exhibits to their Brief in Support of Motion to Dismiss (Doc. 32-1 through 32-20) the factual assertions necessary to support their asserted public disclosure defenses.  Relators objected to this (Doc. 45 at pp. 26-27), in part because a pre-Answer motion to dismiss does not present adequate opportunity to determine material factual issues and, in part, because the factual inferences asserted by Defendants to be drawn from the exhibits, such as the newspaper articles, are reasonably subject to dispute.[6]  Such opportunity should have occurred prior to any dismissal on the basis of the asserted public disclosures in this case.

---

[5] *E.g. U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.,* 906 F. Supp. 2d 1264 (N.D. Ga. March 26, 2012) ("If the Court were to construe Defendant's challenge on the basis of § 3730(e)(4) of the False Claims Act as a factual attack on this Court's subject matter jurisdiction, it would, in essence, convert Defendant's motion into one comparable to summary judgment."); *accord U.S. ex rel. Atkinson v. PA. Shipbuilding Co.,* 473 F.3d 506, 514 (3d Cir. 2007).

[6] In this case, the Court's inference that the "Z" disclosed in the newspaper articles mirrored the Relators' ineligible activities claim is subject to reasonable dispute, which could be resolved, for instance, with supplemental evidence that is informative as to whether the "supplanting" issue raised by Councilman Burgess is the same issue alleged by Relators that the City knowingly spends CDBG funds on categorically ineligible activities.  Relators respectfully submit that these are factually distinct and different practices.

Furthermore, with regard to the Relator's post-ACA fair housing claims, the Court erred by raising *sua sponte* and ruling on an affirmative defense never actually raised by Defendants. Defendants neither raised nor argued that local administrative reports become qualifying sources for public disclosures under the post-ACA FCA as "news media" if posted on a webpage. Because it was neither raised nor briefed by Defendants, Relators were unaware of any need to anticipate and respond to this defense, such as by arguing that the fair housing false claims they raised were not fully disclosed in these documents, for example by failing to address in any way the scienter element, or by submitting evidence to support the original source exception to this defense.[7] As such, dismissal of their post-ACA fair housing claims, which were dismissed solely on this basis, was not supported by the Federal Rules, was unfair to the Relators and risks unintended consequences. This extremely broad extension of the news media category of qualifying sources, which in effect negates Congress' 2010 exclusion of non-federal reports from the list of qualifying sources, should not have been made without notice to and briefing from the Parties and without notice to the United States. Recipients of federal funds knowingly presenting false claims for payment may, as a result of this ruling, simply defend FCA claims based on information buried in massive documentation posted on their publicly available websites.

## Conclusion

For the foregoing reasons, The Relators respectfully move the Court to reconsider the foregoing portions of its Opinion (Doc. 71), Order (Doc. 72) and Judgment (Doc. 73) and either deny Defendants' motion to dismiss (Doc. 38) for the reasons discussed herein or notify the Parties that factual defenses raised in Defendants' motion will be resolved pursuant to Rule 56. In the alternative, Relators respectfully request leave to file a motion to amend with a proposed

---

[7] It must be noted that the allegations on the face of the Complaint plausibly suggest this exception.

Second Amended Complaint to address the adverse factual findings expressed in the Court's Opinion.


Respectfully submitted:                    Dated: April 11, 2016

s/s Donald Driscoll
Donald Driscoll
PA ID# 21548

s/s Kevin Quisenberry
Kevin Quisenberry
PA ID# 90499

Community Justice Project
Suite 800 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
(412) 434-6002

Counsel for Relators