IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE UNITED STATES ex rel. FREEDOM UNLIMITED, INC., NORTHSIDE COALITION FOR FAIR HOUSING, INC., THE HILL DISTRICT CONSENSUS GROUP, INC.** and the **FAIR HOUSING PARTNERSHIP OF GREATER PITTSBURGH,** | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 2:12cv1600 **Electronic Filing** |
| **THE CITY OF PITTSBURGH, PENNSYLVANIA** and **LUKE RAVENSTAHL,** its Chief Executive Officer, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

AND NOW, this 31st day of March, 2017, upon due consideration of the relators' motion for reconsideration and the record as developed in conjunction therewith, IT IS ORDERED that [74] the motion be, and the same hereby is, denied.

In the opinion of March 31, 2016, the court assumed that relators can and would prove every factual averment that had been advanced in their First Amended Complaint. It then considered the impact of those averments under the applicable standards of review. Relators currently fail to advance any new fact or persuasive legal authority that was not considered in the court's disposition. Offering evidence to prove a factual averment that the court has treated as established in the First Amended Complaint does not change the scope of review. It merely seeks to seine the ocean of additional information that discovery would make available in search of new averments that will lead to claim upon which relief can be granted. We do not

understand the applicable standards of review to permit such an expedition. And relators cannot change the core facts that preclude them from establishing original source status in any event.

Similarly, the referenced authority that HUD can withhold or adjust a recipient's future Community Block Grant Development funding as one of several remedial measures in implementing the administrative scheme, see Relators' Brief in Support (Doc. No. 75) at 5 (citing City of Norwood, Ohio v. Harris, 683 F.2d 150, 151 (6th Cir. 1982)), merely supports the court's determination that the malfeasance forming the foundation of the relators' claims distinguishes them from the nonfeasance in U.S. ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester Cty., N.Y., 668 F. Supp.2d 548 (S.D. N.Y. 2009). And the actual setting and context in which relators' claims arise make remediation of the relators' selected forms of malfeasance a matter committed to the exercise of the Secretary's discretion rather than a straightforward condition of payment. Repleading, recasting and rehashing the same facts and arguments leads to the same disposition and is thus insufficient.

Moreover, the court does not disagree with any of the principles of law set forth in the statement of interest filed by the United States. The difficulty with those principles and their straightforward application to the "black-and-white" scenarios set forth in the statement of interest is that those principles are only the beginning of the framework for evaluating whether an actionable violation of the False Claims Act has been stated and they do not address comprehensively the far more detailed situation presented by relators' averments and the matters of which this court has taken notice. The statement of interest does not convincingly explain how the principles highlighted therein supply such a ready-made disposition to this intricate and complex setting and the implicit suggestion that the court should turn a blind eye to the context in which the claims arise for the sake of maintaining a simplistic set of rules in *qui tam* jurisprudence is at best untenable.

Moreover, the averments and information of which the court has taken notice reveal that the City neither lied to HUD about its compliance and submitted false information to cover it up nor sought to hide behind the intricacies of the regulatory scheme to benefit from its own lies; the core information and reports forming the City's alleged deficient performance were disclosed in the information submitted to HUD as ongoing proof of its certification of compliance to the satisfaction of the Secretary. Of course, upon a finding of unsatisfactory compliance by the Secretary HUD had and continues to have a panoply of remedies at its disposal to address and correct the deficiencies as it deems appropriate. But a finding of unsatisfactory performance by the Secretary has not been made and HUD's referral of the City's alleged deficient performance to the Attorney General for appropriate civil action is not a fact of record; nor is it a fair inference that either of these measures was contemplated before or after relators' initiation of this action.

Furthermore, the CDGD and HOME funding is not a bill submitted for receipt of payment upon concrete and specified representations. It is a stream of funding given to certain government bodies under the pledge of complying with an array of policy objectives that reflect national priorities, which priorities are identified in a broad network of statutes, regulations and extensive administrative guidance. A relator's attempt to highlight the treatment of two or three of the several statutorily mandated objectives pursuant to a contention of deficient performance is not a sound basis to subject the affected government entity to the ramifications that flow from holding the deficient performance was an actionable condition of payment under the False Claims Act, particularly where there was performance that was disclosed in the mandated submissions that were made as part of the effort to comply with the ongoing certification process; the deficient performance is of course a reason for termination, adjustment or other remedial sanction with regard to ongoing/future participation. The United States' ability to take

over, monitor or dismiss the litigation and/or its needed approval for any ultimate disposition cannot change these core facts or the implications that flow from them.

The court in Wilkins aptly cautioned against extending the implied certification doctrine in a manner that would make every violation of a complex regulatory scheme into a fraud claim. We have heeded this sage admonishment given the specific circumstances presented. The position advanced in the statement of interest effectively would do just the opposite and eviscerate any limitation in this or any similar setting. And if the court has made an erroneous decision as to whether any one or more of the relators' claims has survived defendant's motion, then this court and the parties should understand the import and boundaries of the claim(s) which may proceed under the circumstances presented before embarking on the undertaking that would flow from such a determination.

s/David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc: Donald Driscoll, Esquire
     Kevin Quisenberry, Esquire
     Michael A. Comber, AUSA
     Colin J. Callahan, AUSA
     Eric Schmeltzer, AAG
     John C. Hansberry, Esquire
     Adam B. Fisher, Esquire
     Lourdes Sanchez Ridge, Esquire

     (*Via CM/ECF Electronic Mail*)